IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| D.D. and S.D., a minor, | : | |
| | : | Case No. 1:13-cv-504 |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting in Part and Denying in |
| James Scheeler, et al., | : | Part Defendants' Motion for Summary |
| | : | Judgment and Denying Plaintiffs' Motion |
| Defendants. | : | to Strike Defendants' Motion for |
| | : | Summary Judgment |

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 22)
and Plaintiffs' Motion to Strike Defendants' Motion for Summary Judgment (Doc. 25). Both
motions are opposed. For the reasons the follow, Defendants' Motion for Summary Judgment
will be GRANTED IN PART and DENIED IN PART, and Plaintiffs' Motion to Strike
Defendants' Motion for Summary Judgment will be DENIED.

## I.     BACKGROUND[1]

## A.     Facts

This action arises from the arrest of a teenage girl at a church festival. Plaintiff S.D., a
fourteen-year-old girl, attended the St. Bartholomew church festival on July 28, 2012, arriving
around 7:00 p.m. (Doc. 16 at PageID 116.)

Defendant James Scheeler is an officer with the Springfield Township Police Department
who was on second shift patrol on July 28, 2012. Officer Scheeler arrived at the festival around
11:00 p.m. in response to a 10:57 p.m. "Officer Needs Assistance" call made by police officers
on the scene at St. Bart's festival due to a fight in progress. Although the fight had been broken

---

[1] Except as otherwise indicated, background facts are drawn from Defendants' Statement of Undisputed Facts (Doc.
30-1 at PageID 885–93) to the extent those facts are admitted in Plaintiff's response thereto (Doc. 32 at PageID
902–08). Where the parties do not explicitly agree on any statement of fact, the Court cites to the portion of the
record providing support for the statement.

up by the time he arrived on scene, Officer Scheeler observed a large crowd containing numerous groups of teenagers as well as teenagers shadowboxing in an area that was still very loud due to continued screaming and hollering.

### 1. S.D.'s Testimony

S.D. and Officer Scheeler have different recollections of how they interacted on July 28, 2012. S.D. witnessed the festival fight and knew the names of the boys involved; she testified that her first encounter with the Officer occurred shortly thereafter. After the fight ended and while the police officers were arresting the people involved in the fight, S.D. approached a group of about five or six police officers to tell them what she witnessed and offer to help. (Doc. 16 at PageID 165.) S.D. testified that Officer Scheeler told her she needed to leave or go away, a response that irritated her. (*Id*. at PageID 170.) Officer Scheeler does not recall this incident. (Doc. 21 at PageID 531–32.)

According to S.D., after the Officer told her to go away, she started walking away with her friend, Dana Dawson, towards the rides area of the festival. (Doc. 16 at PageID 170–72.) S.D. testified that Officer Scheeler followed her and Dana Dawson. (*Id.* at PageID 170–71, 179.) S.D. and Dana Dawson talked as they walked, and S.D. made some comments, although she does not remember exactly what she said. She testified she may have said something to the effect of "fuck the police" because she was irritated with the group of police officers who did not listen to her earlier. (*Id.* at PageID 180–81, 183–84.) She also said something along the lines of "you guys are useless" and could have called the police "idiots." (*Id*.) In her deposition, S.D. initially testified that she might have called the police "bitches" but did not recall; later in her testimony, S.D. denied calling the police "bitches." (*Id*. at PageID 179, 236.) S.D. did not direct her comments toward any police officer. (*Id*. at PageID 179.)

2

As she was walking away and talking to Dana Dawson, Officer Scheeler stopped S.D. and told her she needed to leave the festival.  (*Id.* at PageID 180.)  S.D. kept walking but stopped right before the exit because she needed to call her sister.  (*Id.*)  The Officer told her she needed to leave the festival, and S.D. told the Officer she couldn't because she needed to call her sister and would leave as soon as her sister was with her.  (*Id*. at PageID 183.)

S.D. testified she then pulled out her phone to call her sister, and Office Scheeler told her to give him her phone.  (*Id*. at PageID 186.)  S.D. refused and said she needed to call her little sister so she could leave.  (*Id.*)  The Officer said, "Give me your phone; I'm going to break it." (*Id*.)  S.D. refused, and then the Officer knocked the phone out of her hands.  (*Id.*)  S.D. does not remember if the Officer told her to leave again.  (*Id*. at PageID 187.)   She also testified she was focused on her phone and on calling her sister, and does not remember whether the Officer advised her that she could be arrested if she did not leave the festival.  (*Id*. at PageID 191.)

S.D. testified that after the Officer knocked her phone out of her hands, "that's when he grabbed my wrist and turned – he, like, swirled me around because I was facing the other way and he grabbed my left wrist and, like, swirled me around and, like, dragged me back to the cop car."  (*Id*. at PageID 186.)  Later in her deposition, Plaintiff clarified that she was not dragged but rather "grabbed and forced to, like walk/run with him back to the cop car."  (*Id*. at PageID 190.)

It is undisputed that when Officer Scheeler grabbed her arm to effectuate the arrest, S.D. pulled away.  S.D. does not know if she screamed or said anything in response.  (*Id*. at PageID 203.)  Dana Dawson witnessed S.D. not complying with Officer Scheeler's commands to leave the festival and witnessed S.D. screaming and pulling away from Officer Scheeler multiple times while she was being arrested and taken to the police cruiser.

S.D. admits to being "hysterical" while in the back of the police cruiser, but does not know if she screamed or said anything in response to being initially arrested.  (*Id*. at PageID 203, 209, 221.)  S.D. stated, "I don't think I was resisting because I let him put me in the cruiser without trying to get out" and confirmed that by the time she got to the cruiser, she would have stopped flailing or resisting.  (*Id*. at PageID 221.)

S.D. did not tell Officer Scheeler she was injured that night and did not notice she was hurt until after she had been released by Officer Scheeler.  The "Arrest and Investigation Report" created by Officer Scheeler on July 28, 2012 answers "No" to the question, "Does Arrested have any health problems, illnesses, injuries, or mental disorders."  (Doc. 21-10 at PageID 657.)  Plaintiff alleges injuries to her stomach near her belly ring and to her left wrist.  The left wrist injury required therapy and ultimately surgery.  (Doc. 16 at PageID 77–80.)

S.D. was charged with disorderly conduct pursuant to Ohio Rev. Code 2917.11(A). (Doc. 21-10 at PageID 657.)  Plaintiff's juvenile court case was dismissed because she "completed thirty hours of community service, and completed her anger management classes." (Doc. 22-1 at PageID 722–27.)

### 2. Officer Scheeler's Testimony

Officer Scheeler does not recall an initial interaction where S.D. approached him after the festival fight.  Rather, Officer Scheeler interacted with S.D. while he was performing crowd control measures.  Officer Scheeler addressed S.D.'s group and told them to move their group and exit the festival, and the group responded by slowly making their way towards the entrance driveway area.  (Doc. 21 at PageID 533.)   Officer Scheeler was behind the groups he was trying to force to exit the festival.  (*Id*. at PageID 535.)

S.D.'s group caught Officer Scheeler's attention as he was performing crowd control measures, because the group was not exiting the festival, and S.D. was being loud.  (*Id*. at PageID 536.)  S.D.'s group was near the exit, and S.D. started using "vulgar language."  (*Id*.)  Officer Scheeler testified that he warned S.D. she needed to exit the festival, and gave her three to four warnings, "at which time she then continued with the vulgar language while families [were] exiting the festival."  (*Id*.)  The Officer testified that S.D. was "screaming vulgar language" amongst her friends, but the language was not directed at him.  (*Id*. at PageID 541.)  Officer Scheeler testified that S.D.'s group was pleading with S.D. to leave, but she continued being loud and obnoxious and using vulgar language.  (*Id*. at PageID 545.)

The Officer testified that S.D. stopped short of the exit and refused the leave.  (*Id*. at PageID 542.)  He stated that she "was having a three-year-old temper tantrum in the middle of the festival [ . . . ] causing people to stop and watch, which hindered the rest of the people in the festival from leaving."  (*Id*. at PageID 547.)  Officer Scheeler does not recall S.D. being on the telephone, and he denies batting S.D.'s phone out of her hand.  (*Id*. at PageID 543.)  He testified that after numerous warnings to S.D.'s group to leave the festival, he advised S.D. that if she did not leave, she would be arrested for disorderly conduct.  (*Id*. at PageID 548–49.)  After advising her that she would be arrested, Defendant Scheeler grabbed S.D.'s left arm and put her into an escort position.  (*Id*. at PageID 549.)  Defendant denies twisting S.D.'s wrist.  (*Id*. at PageID 552.)

Officer Scheeler then turned S.D. around and walked her approximately twenty feet to his police cruiser.  (*Id*. at PageID 550, 553.)  Officer Scheeler stated that S.D. then became "dead weight," and put her feet down on the ground and had a "temper tantrum" by refusing to move forward.  (*Id*. at PageID 569.)  Officer Scheeler testified that S.D. was not trying to run, strike

5

him, or be violent, but was refusing to walk with him while he was escorting her to the car. (*Id.* at PageID 570.) The Officer did not place her in handcuffs. (*Id.*) S.D. did not complain of pain, and the Officer did not notice any blood on S.D.'s midriff. (*Id*. at PageID 572.)

## B.    Procedural History

Plaintiff D.D., on behalf of his daughter, S.D., filed this action on July 19, 2013 against Officer James Scheeler, Springfield Township, Ohio, and the Springfield Township Board of Trustees. Plaintiffs allege the Officer's conduct amounted to false arrest and excessive force in violation of S.D.'s federal and state Constitutional rights, deliberate indifference to her medical needs in violation of her federal Constitutional rights, assault, battery, negligence, and loss of consortium. Defendants filed a Motion for Summary Judgment on November 17, 2014 and request summary judgment on all claims. (Doc. 22.) Plaintiffs oppose the Motion (Doc. 24) and filed a Motion to Strike Defendants' Motion for Summary Judgment. (Doc. 25.) Defendants oppose the Motion to Strike. (Doc. 31.)

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585–87; *Provenzano*, 663 F.3d at 811.

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

## III.    ANALYSIS

### A.    Grounds Asserted in Defendants' Motion

Defendants Officer Scheeler, Springfield Township, and the Springfield Township Trustees move the Court for summary judgment on all claims, arguing that (1) S.D.'s false arrest claim fails because the Officer had probable cause to arrest, as evidenced by the disposition of S.D.'s juvenile court case; (2) S.D.'s excessive force claim fails because Officer Scheeler's use of force was reasonable, but even if it was not, he is entitled to qualified immunity on that claim; (3) S.D.'s claim for deliberate indifference to her medical treatment fails for lack of evidence; (4) Plaintiffs' negligence, assault, battery, and consortium claims fail because Plaintiffs' excessive force claim fails; and (5) Plaintiffs' failure to establish any constitutional violation dooms their § 1983 claims against Springfield Township and Springfield Township Trustees.  The Court first

will consider the claims against Officer Scheeler, and then will consider the claims against Springfield Township and the Springfield Township Board of Trustees.

**B.    False Arrest/Imprisonment**

**1.    Construction of Plaintiffs' Claim**

The Court first turns to Plaintiffs' false arrest claim against Officer Scheeler. In count six of the Complaint, Plaintiffs allege Defendant Scheeler wrongfully grabbed S.D. and confined her to a cruiser. Although this claim, labeled "False Arrest/Imprisonment," does not state whether it is brought under state or federal law, it incorporates the allegations made earlier in the Complaint, including a statement that the claims alleged are brought pursuant to both federal and state law. (*See* Doc. 1 at PageID 4, 8.) Consistent with the liberal pleading standard of Fed. R. Civ. P. 8, the Court construes count six liberally as a false arrest claim brought under both federal and Ohio law.

In order to prevail on a civil rights claim under 42 U.S.C. § 1983, a plaintiff "must establish that a person acting under color of state law deprived him of a right secured by the Constitution of laws of the United States." *Everson v. Leis,* 556 F.3d 484, 493 (6th Cir. 2009) (citing *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006)). There is no dispute that Officer Scheeler was acting under the color of state law. The issue is whether the Officer deprived S.D. of any rights under the Constitution.

The basis of Plaintiffs' false arrest claim is that Defendant Scheeler lacked probable cause to arrest her. As to the federal claim, a claim for false arrest and false imprisonment are overlapping; "the former is a species of the latter" and are considered the tort of false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "A person who has been the victim of an unlawful arrest or wrongful seizure under the color of law has a claim based on the Fourth

8

Amendment guarantee that government officials may not subject citizens to searches or seizures without proper authorization." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (citing U.S. Const. amend. IV). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Id.* (citing *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004)). "The validity of the arrest does not depend on whether the suspect actually committed a crime...." *Id.* (citing *Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979)). "Thus, 'in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause.'" *Id.* (quoting *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002)). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Id.* (citing *Logsdon v. Hains,* 492 F.3d 334, 341 (6th Cir. 2007)).

With respect to her state claim, an action for false arrest also includes false imprisonment. *Henderson v. City of Euclid*, No. 101149, 2015 WL 114601, at *9 (Ohio. Ct. App. Jan. 8, 2015) (citing *Mayes v. Columbus*, 664 N.E.2d 1340, 1342 (Ohio Ct. App. 1995)). In order to prevail on a claim for false arrest or imprisonment under Ohio law, the plaintiff must demonstrate: (1) the intentional detention of the person and (2) the unlawfulness of the detention." *Id.* (citing *Hodges v. Meijer, Inc.*, 717 N.E.2d 806, 809 (Ohio Ct. App. 1998)). An arrest based on probable cause therefore defeats a claim of false arrest and false imprisonment. *Id.*

**2.     Existence of Probable Cause**

Defendants argue the disposition of S.D.'s juvenile court case establishes that Officer Scheeler had probable cause to arrest her for disorderly conduct, which bars S.D.'s false arrest claim. Defendants rely upon S.D's juvenile court records[2] following her charge with disorderly

---

[2] The records include a Complaint alleging S.D. recklessly caused annoyance to another by making an offensively coarse utterance to person(s) which served no lawful and reasonable purpose in violation of Ohio Rev. Code §

conduct to establish that S.D.'s juvenile court case was dismissed after she completed certain criteria set forth by the magistrate presiding over her case.

By separate motion and in opposition to Defendant's Motion for Summary Judgment, Plaintiffs argue records relating to S.D.'s juvenile court case's disposition are inadmissible under Federal Rule of Evidence 410 and 609 and do not establish that S.D. participated in a diversion program to gain dismissal of the charge against her.  Plaintiffs also argue that the records do not establish a conviction, admission of guilt, or that the Officer had probable cause to arrest her for disorderly conduct.  Plaintiffs request the Court to strike Defendants' entire Motion for Summary Judgment as a result of the attachment of S.D.'s juvenile court records.  (Doc. 25 at PageID 752.)

Contrary to Defendants' argument, the juvenile records do not establish that S.D. was convicted of or admitted to the disorderly conduct charge.  Although Defendants argue that this case is analogous to *Bolden v. City of Euclid*, it is distinguishable. No. 13-4397, 2014 WL 6871655, at *2, 4, 6 (6th Cir. Dec. 8, 2014).  There, the Sixth Circuit held that one plaintiff's admission in juvenile court that he trespassed established the officer had probable cause to arrest him, barring his subsequent unlawful arrest action.  *Id.*  Like S.D., plaintiff Martin in the *Bolden* case did not go to trial.  Rather, he entered into a juvenile diversion program.  *Id.* at *2.  But unlike S.D., both Martin and his mother confirmed at their depositions that they understood diversion to be an admission of the charge against Martin, and they testified that the magistrate who permitted Martin to participate in the diversion program did so only after Martin admitted, on the record, to trespassing.  *Id.* at *2, 4.

The *Bolden* court held, "[Martin's] admission in juvenile court that he trespassed on Officer Doyle's property establishes probable cause." *Id.* at *4.  Martin's "admission to

_____

2917.11(A), an arrest and investigation report, a suspect/arrest supplement, a November 2, 2012 order, and a January 29, 2013 decision.  (Doc. 22-1 at PageID 722–27.)

trespassing [was] dispositive of his [unlawful arrest] claim." *Id.* Alternatively, judicial estoppel barred Martin's claim, because the juvenile court accepted his position that he was trespassing in order to allow him to participate in the diversion program, thereby precluding him from challenging probable cause in this case. *Id*. at *4. Thus, Martin's admission established the Officer had probable cause to arrest him, which barred both his § 1983 unlawful seizure claim and state law false arrest claim. *Id*. at *2, 4, 6.

Defendants in this case have not come forward with evidence demonstrating that S.D. admitted to or was convicted of the charge of disorderly conduct forming the basis of her false arrest claim. Defendants ask the Court to reach two conclusions based upon S.D.'s juvenile court records: the dismissal of S.D.'s juvenile case establishes that she participated in a diversion program governed by Rule 37 of the Rules of Practice of the Hamilton County Juvenile Court, and because S.D. participated in such a program, she admitted to the disorderly conduct charge.

The evidence before the Court is that the juvenile court magistrate issued a November 2, 2012 continuing S.D.'s case and establishing certain criteria for completion: "Continue for trial-setting to 1/29/2013 at 10:30 AM Magistrate David Kelley, J. Pippin. Continued for trial or entry. Defendant must complete 30 hours of community service, no new charges, and an anger management assessment." (Doc. 22-1 at PageID 727.) Thereafter, on January 29, 2013, the juvenile court magistrate dismissed the case with an order reading as follows: "Dismissed. Child has completed thirty hours of community service, and completed her anger management classes." (*Id*. at 726.) Both S.D. and her father testified about the requirements involved in having S.D.'s juvenile court charge dismissed, and it is undisputed that S.D.'s juvenile court case was dismissed by virtue of her completing those requirements. (Doc. 16 at 196–97, PageID 241–42; Doc. 28 at 47–49, PageID 806–08.)

Defendants argue this evidence is enough to establish an admission.  Relying upon Rule 37, Defendants argue this evidence establishes S.D. participated in an official diversion program, for which participation is contingent upon an admission of guilt.  Rule 37 states:

> The Court may divert to the unofficial docket a misdemeanor case of a child who has had no previous official charge and no previously diverted cases in the preceding two years.  Diverted cases are heard by a hearing officer and no official record results if the child admits to the charge and complies with the recommendations of the hearing officer.  If the child denies the charge or does not comply with the recommendations, the case will be referred to the official docket for hearing.

(Doc. 29-2 at PageID 876.)  Defendants rely upon the requirement that a case can only be diverted if the child "admits to the charge" and "complies with the recommendations of the hearing officer."

The evidence before the Court is unclear whether S.D. participated in a Rule 37 program.  There is no testimony or record that establishes that S.D.'s juvenile court case was dismissed because she participated in a diversion program governed by Rule 37.  Thus, an admission cannot be established by virtue of S.D.'s case being dismissed contingent upon certain criteria being met.

Additionally, the record before the Court in this case does not include testimony by S.D. that she admitted to the disorderly conduct charge or understood that her completing criteria to have her case dismissed constituted an admission.  By contrast, in *Bolden*, plaintiff Martin's admission of the charges brought against him was established through testimony by himself and his mother.  2014 WL 6871655, at *2.  Indeed, in *Bolden*, the juvenile court judge allowed the plaintiff to participate in the diversion program only after plaintiff admitted on the record to trespassing.  *Id.*  In this case, S.D. confirmed that she completed community service hours, underwent anger management training, and did not receive any new charges from November 2,

2012 until January 29, 2013.  (Doc. 16 at PageID 238–42.)  She testified that the reason why her disorderly conduct charge was dismissed was because she completed those three criteria.  *Id.*  But, unlike in *Bolden*, S.D. did not testify that her completion of those criteria and the dismissal of her case constituted an admission of the disorderly conduct charge.  Absent analogous evidence in this case, the Court cannot conclude that the dismissal of the charge against S.D. in her juvenile case establishes the arresting Officer had probable cause to arrest her for disorderly conduct under Ohio Rev. Code § 2917.11(A).  As there is no evidence S.D. admitted to or pled no contest to the charge against her in juvenile court, S.D.'s claim is not subject to either collateral or judicial estoppel.  *See id.* at *4.

The Court also rejects Defendants' argument that S.D.'s claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  The *Heck* rule prohibits § 1983 actions that necessarily require the court to find the conviction underlying an action was invalid.  Defendants rely upon *S.E. v. Grant County Bd. of Educ.*, 522 F. Supp. 2d 826, 831 (E.D. Ky. 2007), *aff'd*, 544 F.3d 633 (6th Cir. 2008) for their argument that S.D.'s participation in a diversion program constitutes a conviction and bars her § 1983 claim pursuant to *Heck*.  In that case, the district court found that there was no material difference between a diversion program entered into by plaintiff, which it deemed was not a favorable termination, and a conviction resulting in probation.  544 F.3d at 638.  As discussed, it is disputed whether S.D. participated in a diversion program.  But even if she did, Defendants ignore Sixth Circuit case law.  On appeal, the Sixth Circuit expressly rejected the Defendants' argument and district court's analysis in *S.E. Grant* and stated, "where the plaintiff was neither convicted nor sentenced and was habeas-ineligible, we hold that *Heck* is inapplicable, and poses no bar to plaintiffs' claims."  *Id.* at 639.  Accordingly, Defendants'

argument that *Heck* precludes S.D.'s § 1983 claims is inconsistent with Sixth Circuit precedent and must be rejected.

Neither party further briefed the issue of whether the facts of this case establish that the Officer had probable cause to arrest S.D. for disorderly conduct in violation of Ohio Rev. Code § 2917.11(A). The parties instead focus on the separate claim of whether the Officer used excessive force in effectuating the arrest.[3] Accordingly, Defendants have not met their burden in demonstrating that they are entitled to summary judgment on S.D.'s claim of false arrest by demonstrating the Officer had probable cause to arrest S.D. for a violation of Ohio Rev. Code § 2917.11(A). Therefore, summary judgment for Defendants on their state and federal false arrest claims is denied.

**3.      Plaintiffs' Motion to Strike Defendant's Motion for Summary Judgment**

Plaintiffs argue that the records relating to S.D.'s juvenile court case's disposition are inadmissible under Federal Rule of Evidence 410 and 609 and that the Court should strike Defendants' entire Motion for Summary Judgment as a result of the attachment of S.D.'s juvenile court records. (Doc. 25 at PageID 752.) For the reasons that follow, this argument is without merit, and Plaintiffs' Motion to Strike is denied.

Initially, the Sixth Circuit considered analogous evidence in *Bolden* to evaluate the same issue before this Court, and Plaintiffs offered no authority to support the position that Defendants' entire Motion for Summary Judgment should be struck due to citation and inclusion of that evidence. *See Bolden*, 2014 WL 6871655, at *2, 4. Consistent with *Bolden*, the evidence

---

[3] Nor do Defendants address false arrest in Officer Scheeler's qualified immunity argument; therefore, the Court will not engage in an independent assessment. *See Ware v. Sanderson*, No. 1:12-cv-01920, 2013 WL 587583, at *4, n. 58 (N.D. Ohio Feb. 13, 2013) (denying summary judgment on false arrest claim and noting that the defendant failed to address false arrest in his qualified immunity argument).

of S.D.'s juvenile court disposition is relevant to determining whether a conviction or pretrial diversion program constitutes an admission of the charge underlying her false arrest claim.

Additionally, Plaintiffs' reliance upon Fed. Rules of Evidence 410 and 609 is misplaced. Plaintiffs argue Rule 410 bars consideration of the juvenile court records, because dismissal contingent upon certain requirements are statements made during plea discussions not resulting in a guilty plea.[4]  Plaintiffs' position is also based upon their assertion that S.D. entered a not guilty plea that was never withdrawn.  Of note, Plaintiffs have provided no evidence to the Court of S.D.'s not guilty plea.  Regardless, however, Plaintiffs have not provided persuasive authority that Rule 410 is applicable or that the magistrate's orders constitute evidence of a plea bargain.

Plaintiffs further argue that Federal Rule of Evidence 609, which addresses impeachment by evidence of a criminal conviction, bars the admission of the contested records.[5]  The Court is

---

[4] Rule 410 states:

> (a) Prohibited Uses. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
> (1) a guilty plea that was later withdrawn;
> (2) a nolo contendere plea;
> (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.
> (b) Exceptions. The court may admit a statement described in Rule 410(a)(3) or (4):
> (1) in any proceeding in which another statement made during the same plea or plea discussions has been introduced, if in fairness the statements ought to be considered together; or
> (2) in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present.

[5] Rule 609 states in relevant part:

> (a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

not persuaded that Rule 609 is applicable, as the evidence at issue is not being used to impeach S.D.'s character for truthfulness.

For these reasons, Plaintiffs' Motion to Strike is denied.

## C.     Excessive Force

The Court now turns to S.D.'s excessive force claim. S.D. argues Officer Scheeler's use of force was unreasonable and violated the Fourth Amendment and that issues of fact preclude qualified immunity. Defendants argue Officer Scheeler's use of force was objectively reasonable and did not violate the Fourth Amendment. Alternatively, Defendants argue Officer Scheeler is entitled to qualified immunity.

"An officer making an investigative stop or arrest has 'the right to use some degree of physical coercion or threat thereof to effect it.'" *Bolden*, 2014 WL 6871655, at \*5 (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (citations omitted)). To prove that an officer's use of force was excessive in violation of the Fourth Amendment, the plaintiff must show that the use of force was objectively unreasonable under the circumstances. *Graham v. Connor,* 490 U.S. 386, 399 (1989). Determining the objective reasonableness of a particular seizure "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at

---

(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.

[ . . . ]

(d) Juvenile Adjudications. Evidence of a juvenile adjudication is admissible under this rule only if:
(1) it is offered in a criminal case;
(2) the adjudication was of a witness other than the defendant;
(3) an adult's conviction for that offense would be admissible to attack the adult's credibility; and
(4) admitting the evidence is necessary to fairly determine guilt or innocence.

396 (internal quotations and citations omitted).  The inquiry requires analyzing the totality of the circumstances.  *Id.*

Reasonableness is analyzed "from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'  We thus 'allo[w] for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Plumhoff v. Rickard,* 134 S.Ct. 2012, 2020 (2014) (citing *Graham,* 490 U.S. at 396–97).  "Among the most important factors to consider in determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight."  *Grawey v. Drury,* 567 F.3d 302, 310 (6th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

S.D. argues that the lack of probable cause to arrest her renders any use of force in effectuating that arrest unreasonable, but she has not supported her argument with any applicable Sixth Circuit case law.  Whether the Officer used excessive force in violation of the Fourth Amendment must be separately analyzed from S.D.'s false arrest claim.  *New v. Perry,* No. 2:07-cv-723, 2009 WL 483341, at *11 (S.D. Ohio Feb. 25, 2009*)* (excessive force in accomplishing seizure and legality of seizure are distinct inquiries); *see Williams v. Crosby*, No. 3:13-cv-2041, 2014 WL 4066267, at *6 (N.D. Ohio Aug. 12, 2014) (rejecting approach that any amount of force applied to carry out an unlawful arrest is excessive).  Accordingly, although the issue of whether the Officer had probable cause to arrest S.D. has not been determined by this Court, S.D.'s excessive force claim must nonetheless be separately considered.

The Court also rejects Plaintiffs' request that the Court use a segmented analysis and consider the Officer's conduct well before and leading up to the use of force in determining whether the Officer's use of force was reasonable.  S.D. does not support her argument with any relevant Sixth Circuit case law.  Under the precedent in this Circuit, those events leading up to an arrest are "irrelevant" in determining whether the officer's use of force amounts to a constitutional violation.  *See Williams*, 2014 WL 4066267, at *11 (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (explaining that a court examining an excessive force claim must consider only an officer's "split-second judgments immediately prior to using deadly force. Because it is the reasonableness of the 'seizure' that is the issue, not the reasonableness of the [officer's] conduct in time segments leading up to the seizure, the district court properly held that any fact issues relating to the issuance of the warrant and initial entry into the ... residence [where deadly force was used] are immaterial".))  Therefore, the Court will not consider the Officer's conduct leading up to the use of force but only those "split-second judgments" immediately preceding his use of force.

Defendants argue the Officer's use of force was reasonable and rely upon *Bolden*, where the court found an officer's use of force objectively reasonable and not in violation of the Fourth Amendment.  2014 WL 6871655, at *5–6.  In *Bolden*, two minors were questioned by an officer due to the officer's belief the two were criminal trespassing.  *Id*. at *1.  One of the two boys, Martin, disregarded the officer's order to stop and get on the ground and instead walked away, pulling his phone out of his pocket to call his mother.  *Id*.  In response, the officer "smack[ed]" the phone out of Martin's hand, threw Martin's headphones to the ground, and threw Martin to the ground, forcibility holding him down.  *Id.*  The Officer used one hand to secure Martin's

arms behind his back and the other hand and a knee to hold down Martin's face.  *Id*.   Martin was then handcuffed.  *Id.*

In examining the *Grawley* factors, the court found the first factor weighed against the use of force, as criminal trespassing is a relatively minor offense.  *Id*. at *5.  As to the second factor, the court found Martin did not pose an obvious threat of danger, but considered the fact that Martin admittedly disregarded the officer's commands, reached into his pocket to call his mother, and left uncertain the issue of whether Martin had anything in his pocket.  *Id.*  As to the third factor, the court found Martin was actively resisting arrest, by refusing to sit down when told to do so and disregarding the officer's commands to instead call his mother.  *Id.*  Thus, the force used to control the situation was objectively reasonable.  *Id.*  Finally, the court noted that the alleged injuries were de minimus, and the absence of injury supported the conclusion that the use of force against him was reasonable.  *Id.* at *6.

*Bolden* is nearly indistinguishable from the instant case with respect to the excessive force claim.  Here, the first *Grawley* factor weighs against the use of force, as disorderly conduct, like criminal trespassing, is a relatively minor offense.  Secondly, as in *Bolden,* it is undisputed that S.D. did not pose an obvious threat to the Officer.  (Doc. 21 at 150, PageID 555.)  Finally, although S.D. ignored the Officer's commands to leave and the Officer admits he did not consider S.D. a risk of flight, the evidence is undisputed that she ignored his commands to leave the festival.  Thus, consistent with *Bolden*, some use of force was justified to control the situations, and the use of force was objectively reasonable.  Therefore, summary judgment is appropriate for the Defendants on this claim.

Summary judgment is similarly appropriate for the Defendants on the excessive force claim arising under the Ohio Constitution, as the analysis is the same.  *Ashbrook v. Boudinot,*

No. C2-06-140, 2007 WL 4270658, at *8 (S.D. Ohio Dec. 3, 2007) ("The Ohio Supreme Court has held that the Ohio Constitution affords the same protections as the Fourth Amendment and as such, the analysis is the same for state and federal excessive-force claims.") (citing *State v. Robinette,* 685 N.E.2d 762, 765 (Ohio 1997)).

Although the parties also contest whether the Officer is entitled to qualified immunity on this claim, the Court need not consider those arguments or rule on the issue of qualified immunity having found that the Officer's use of force was objectively reasonable.

**D.     Deliberate Indifference**

S.D. alleges her Fourteenth Amendment rights were violated by Defendant Scheeler when he failed to render appropriate medical aid after her arrest.  "The Due Process Clause of the Fourteenth Amendment requires government officials to provide adequate medical care to individuals injured while apprehended by police."  *Scozzari v. Miedzianowski*, 454 Fed. App'x 455, 464 (citing *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."); *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)).  "A claim for deliberate indifference to serious medical needs has both objective and subjective components."  *Scozzari*, 454 Fed. App'x at 464 (citing *Phillips,* 534 F.3d at 539.)  The objective component requires showing the existence of a "sufficiently serious" medical need, while the subjective component requires the plaintiff to "allege facts which, if true, would show that the official … subjectively perceived facts from which to infer substantial risk to the [individual], that he did in fact draw the inference, and that he then disregarded that risk."  *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Phillips*, 534 F.3d at 539.)

There is no record evidence to support S.D.'s deliberate indifference claim, nor have Plaintiffs identified any in responding to Defendants' Motion for Summary Judgment on this claim. Rather, it is undisputed that S.D. never told the Officer she was injured the night of the arrest, nor did she notice she was hurt until after she was released by the Officer. The Officer's records also establish he did not have any knowledge that S.D. was injured the night of the arrest, and the Officer testified S.D. did not complain of pain that night. (Doc. 21-10 at PageID 572, 657.) As there is no evidence demonstrating a sufficiently serious medical need Officer Scheeler failed to address the night of the arrest, the Officer is entitled to summary judgment on S.D.'s deliberate indifference claim.

**E.      Assault and Battery**

Plaintiffs allege that Defendant Scheeler's arrest of S.D. constitutes assault, battery, and/or negligence.[6] The Court will separately consider S.D.'s assault and battery claims from the negligence claim. Because the amount of force used to arrest S.D. was reasonable under the circumstances, S.D. cannot make out a claim of assault or battery under Ohio law. "It is well established that 'state law claims for assault and battery rise and fall with [plaintiff's] Fourth Amendment excessive-force claim.'" *Ashbrook v. Boudinot*, 2007 WL 4270658, at *8 (citing *D'Agastino v. City of Warren*, 75 Fed. App'x 990, 995 (6th Cir. 2003)). Accordingly, the Officer is entitled to summary judgment on the state law assault and battery claims.

**F.      Negligence**

The same facts alleged to support an assault and battery claim are alleged to support a negligence claim against Defendant Scheeler. "Under Ohio law, conduct that could give rise to an assault and battery claim cannot serve as the basis of a negligence claim." *May v. McGrath*,

---

[6] Negligence is also pled as a separate cause of action.

No. 2:11-cv-0839, 2013 WL 1401371, at *9 (S.D. Ohio, April 5, 2013).  Thus, summary

judgment for the Officer is appropriate on Plaintiffs' state law negligence claim.

## G.    Loss of Consortium

Plaintiff D.D.'s parental consortium claim is derivative of his daughter's negligence

claim against Defendants.  Where a negligence action fails, so too does the derivative action for

loss of consortium.  *Salmon v. Rising Phoenix Theatre*, No. CA2005-11-491, 2006 WL 2390434,

at *2 (Ohio App. Aug. 21, 2006).  Summary judgment is therefore appropriate for the Officer on

the consortium claim.

## H.    Municipal Liability

In addition to pursuing claims against Officer Scheeler, Plaintiffs also seek to hold

Springfield Township and Springfield Township Board of Trustees liable under § 1983 and the

Ohio Constitution and for the torts alleged to have been committed by Officer Scheeler.

To the extent that Plaintiffs sue Officer Scheeler in his official capacity, the claims

against the Officer are essentially claims against the Township and Board and will be analyzed

as such.  *Campbell v. City of Springboro, Ohio*, 788 F. Supp. 2d 637, 677 (S.D. Ohio. 2011),

*aff'd in part, appeal dismissed in part*, 700 F.3d 779 (6th Cir. 2012) (citing *Leach v. Shelby Cnty.*

*Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) ("A suit against an individual 'in his official

capacity' has been held to be essentially a suit directly against the local government unit and can

result in that unit's liability to respond to the injured party for his injuries.")).

A government entity may be held liable under § 1983 as follows:

Section 1983 does not permit a plaintiff to sue a local government entity on the
theory of respondeat superior.  *Monell v. New York City Dep't of Soc. Servs.*, 436
U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  A plaintiff may only
hold a local government entity liable under § 1983 for the entity's own
wrongdoing.  *Id.*  A local government entity violates § 1983 where its official
policy or custom actually serves to deprive an individual of his or her

>constitutional rights.  *Id.*  A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers.  *Id.*

*Id.* (citing *Gregory v. City of Louisville*, 444 F.3d 725, 752–53 (6th Cir. 2006)).

Plaintiffs' *Monell* claim is narrowed to the false arrest claim, because Plaintiffs must be able to prove that the Officer inflicted a constitutional injury upon S.D. on July 28, 2012, and failure to establish a violation renders her claims against the Township and Board meritless pursuant to *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.") (emphasis removed).

As to Plaintiffs' surviving false arrest claim, Defendants point to an absence of any evidence demonstrating an unconstitutional policy or custom.  Defendants also argue Plaintiffs abandoned this claim, because they failed to defend this claim or point to any record evidence to establish a material issue of fact that there was a policy or procedure in place that was constitutionally deficient in responding to Defendants' Motion for Summary Judgment.  *See Hicks v. Concorde Career Coll.,* 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in response to a motion for summary judgment); *Clark v. City of Dublin*, 178 Fed. App'x 522, 524–25 (6th Cir. 2006) (recognizing that failure to respond properly to a motion for summary judgment arguments constitutes abandonment of a claim).  Defendants' arguments are well-taken.  Plaintiffs have come forward with no evidence of an unconstitutional policy or procedure to support their claim, and summary judgment is therefore appropriate for the Defendants on the *Monell* claim.

IV.     CONCLUSION

The Court, having reviewed the parties' pleadings and in accordance with the reasons stated herein, GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment (Doc. 22), and DENIES Plaintiffs' Motion to Strike Defendants' Motion for Summary Judgment (Doc. 25).

Consistent with the reasoning herein, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' excessive force, deliberate indifference, assault, battery, negligence, and loss of consortium claims.  Defendants' Motion for Summary Judgment is DENIED as to Plaintiffs' false arrest claim.

IT IS SO ORDERED.


S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court